**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **BIANELA MORETA-MATEO** | ) |
| | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )  **Case No. CIV-26-539-J** |
| | ) |
| **WARDEN DIAMONDBACK** | ) |
| **CORRECTIONAL FACILITY et al.,** | ) |
| | ) |
| **Respondents.** | ) |

## REPORT AND RECOMMENDATION

Petitioner Bianela Moreta-Mateo, a noncitizen[1] proceeding *pro se*, filed a Petition

for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging her detention by U.S.

Immigration and Customs Enforcement (ICE). (ECF No. 1). United States District Judge

Bernard M. Jones II referred this matter to the undersigned magistrate judge in

accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Respondents filed a response. (ECF No.

8).[2] For the reasons set forth below, the undersigned recommends that the Court grant

the Petition, in part, and order Respondents to provide Petitioner a bond hearing pursuant

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] Petitioner also filed a Motion for Temporary Restraining Order. (ECF No. 2). This Motion is duplicative of the claims and requested relief alleged in the Petition and will be considered in conjunction with the same and should be terminated as moot upon the Court's adjudication of the Petition.

to 8 U.S.C. § 1226(a) within five business days at which the government bears the burden of proof or otherwise to release her if there is no hearing within that time.

## I.    BACKGROUND

Petitioner, a citizen of the Dominican Republic, entered the United States on or about September 1, 2022, at or near a port-of entry at Eagle Pass, Texas, charged as an alien present in the United States without being in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document  in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I). (ECF No. 8-1:1-2). On September 3, 2022, Petitioner was ordered removed, but on September 12, 2022, she was paroled for one year, subject to certain reporting requirements. (ECF No. 8-1 & 8-2). Following her release, Petitioner applied for asylum, but the application was dismissed on June 5, 2025. (ECF No. 8-3 & 8-4). On January 29, 2026, while checking in with her ICE officer, Petitioner was arrested and charged with violating 8 U.S.C. § 1182(a)(6)(A)(i) of the INA as an alien who is present in the United States without being admitted or paroled and 8 USC § 1182(a)(7)(A)(i)(I) for lacking valid entry documents. *See* ECF No. 8-5. Petitioner was taken to the Diamondback Correctional Facility where she is currently detained.[3]

## II.    PETITIONER'S CLAIMS

Petitioner alleges her detention is governed by 8 U.S.C. § 1226 and that his continued detention without a bond hearing violates the INA and Due Process. (ECF No.

---

[3] *See* https://locator.ice.gov.odls/#/results (last visited June 10, 2026).

1). Petitioner requests her release and a bond hearing at which the government bears the burden of proof. (ECF No. 1:9). Petitioner also seeks declaratory relief, an order to show cause as to why the Petition should not be granted in three days, and attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. (ECF No. 1:9).[4]

## III.  STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV.  ANALYSIS

The Court should: (1) find jurisdiction over the Petition and (2) grant the Petition, in part, and as discussed below.

### A.  The Court has Jurisdiction to Consider the Petition

Respondents contend that 8 U.S.C. §§ 1252(a)(5), (b)(9), and 1252(g) bar the Court from hearing Petitioner's claims related to his detention. (ECF No. 8:17-20). Similar jurisdictional arguments have recently been rejected by multiple district courts

---

[4] As a pro se litigant, Petitioner would not be entitled to EAJA fees. Additionally, based on the recommendation, the Court need not consider Petitioner's request for declaratory relief and Petitioner's request for an order to show cause has been rendered moot by this Court's order for Response. *See* ECF No. 6.

throughout the country. *See, e.g., Hasan v. Crawford*, No. 1:25-CV-1408 (LMB/IDD), 800 F.3d. Supp. 641, 650. n.7 (E.D. Va. Sep. 19, 2025) ("Federal courts throughout the country have similarly found that these jurisdiction-stripping provisions do not deprive the federal courts of jurisdiction to review a noncitizen's challenge to the legality of his detention." (collecting cases)). As explained below, the undersigned agrees with those courts that have found jurisdiction exists to consider arguments challenging detention in circumstances similar to Petitioner's.

### 1.    Sections 1252(a)(5) and 1252(b)(9)

Respondents first argue the Court lacks jurisdiction to consider the Petition because: (1) the INA channels "claims related to removal orders" to a court of appeals rather than a district court, and (2) such claims include "[t]he decision to effectively begin those proceedings via § 1225(b)(2)(A) and immediate filing of an NTA." (ECF No. 8:17) (citing 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9)). Accordingly, Respondents argue that under § 1252(a)(5) and § 1252(b)(9), the decision to charge and detain Petitioner can "be reviewed by the appropriate court of appeals as part of an appeal of a final order of removal—but not this Court." (ECF No. 8:17). Several courts have recently rejected this jurisdictional argument for the fundamental reason that detention orders "are separate and apart from orders of removal." *Hasan*, 800 F.3d. Supp. at 650 (citation modified). Challenges to detention orders "are legal in nature and challenge specific conduct unrelated to removal proceedings." *Garcia Cortes v. Noem*, No. 1:25-cv-02677-CNS, 2025

WL 2652880, at *2 (D. Colo. Sep. 16, 2025) ("Congress did not intend the zipper clause to cut off claims that have a tangential relationship with pending removal proceedings. A claim only arises from a removal proceeding when the parties in fact are challenging removal proceedings.") (quoting *Mukantagara v. US. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023)) (citation modified); *Gutierrez v. Baltasar*, No. 25-CV-2720-RMR, 2025 WL 2962908, at *2-3 (D. Colo. Oct. 17, 2025) (rejecting jurisdictional argument, in part, because the petitioner's claims challenging detention under 8 U.S.C. § 1225 rather than § 1226 due to a change in policy was a challenge to specific conduct unrelated to removal proceedings).

The Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281, 294-95 (2018), recognized the limited circumstances where § 1252(b)(9) would bar a district court's jurisdiction. The Court in *Jennings* noted the aliens in that case "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar." *Id.*

Here, like many recent habeas cases by aliens challenging mandatory detention under § 1225(b)(2)(A), "Petitioner does not challenge any removal order because no order of removal has yet been entered against him. Rather, he challenges the constitutionality and legality of his detention during the period before his removal hearing." *S.D.B.B. v. Johnson*, No. 1:25-cv-882, 2025 WL 2845170, at *3 (M.D.N.C. Oct.

7, 2025). As such, "§ 1252(b)(9) does not deprive the court of jurisdiction." *Id.* This interpretation of § 1252(a)(5) and § 1252(b)(9) tracks the same recent analysis of several district courts. *See, e.g.*, *Caballero*, 2025 WL 2977650, at \*4 (ruling § 1252(b)(9) does not present a jurisdictional bar to an alien challenging "the legality of his continued detention without a bond hearing"); *Hasan*, 2025 WL 2682255, at \*4 ("Section 1252(b)(9) does not insulate detention orders from judicial review because they are separate and apart from orders of removal.") (citation modified); *Hernandez Marcelo v. Trump*, No. 3:25-cv-00094-RGE WPK, 801 F. Supp. 3d 807, 818, 819 (S.D. Iowa Sep. 10, 2025) (concluding § 1252(a)(5) and§ 1252(b)(9) are inapplicable because the habeas petitioner was challenging his detention without a bond hearing, not an order of removal); *Jose J.O.E. v. Bondi*, No. 25-cv-3051 (ECT/DJF), 797 F. Supp. 3d 957, 968-969 (D. Minn. Aug. 27, 2025) (same) (collecting cases)). Notably, Respondents provided no example of a recent district court decision adopting their view.

The undersigned agrees with the prevailing analysis from other district courts that have recently considered this question and concludes that § 1252(a)(5) and § 1252(b)(9) do not deprive the Court of jurisdiction.

### 2.    Section 1252(g)

Respondents also argue that the INA limits a district court's jurisdiction to consider "any cause or claim by or on behalf of any alien arising from the decision or action by [DHS] to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien under this chapter." (ECF No. 8:18) (quoting 8 U.S.C. § 1252(g)). Respondents

assert that "the bar on considering the commencement of proceedings includes a bar on considering challenges to the *basis on which* DHS chooses to commence removal proceedings." (ECF No. 8:18).

In *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court explained that § 1252(g)'s jurisdictional bar applies only to "three discrete actions" – the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. The Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* More recently, in *Jennings*, the Court reaffirmed this narrow reading, explaining that *Reno* "did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." 583 U.S. at 294. Instead, the statutory language refers "to just those three specific actions themselves." *Id.*

Though § 1252(g) indeed imposes a jurisdictional bar on a court's ability to review certain habeas petitions, the restrictions are to be read narrowly. *See, e.g., Reno*, 525 U.S. at 487 (referencing the Court's "narrow reading of § 1252(g)"); *Gutierrez*, 2025 WL 2962908, at *3 ("Section 1252(g) imposes a narrow judicial bar to a federal court's review of 'any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.'") (quoting 8 U.S.C. § 1252(g)); *Hasan*, 2025 WL 2682255, at *4 ("Section 1252(g) has a narrow reach."); *Garcia Cortes*, 2025 WL

2652880, at * 1 ("These statutory bars are read narrowly."); *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *3 (S.D. Fla. Sep. 9, 2025) ("The Supreme Court has given § 1252(g) a 'narrow reading,' emphasizing that it does not cover 'all claims arising from deportation proceedings' or impose 'a general jurisdictional limitation.'" (quoting *Reno*, 525 U.S. at 482, 487)).

Here, Petitioner does not challenge the commencement of removal proceedings, the adjudication of removal proceedings, or the execution of removal orders. Instead, she challenges "the narrow legal questions of whether [her] detention under 8 U.S.C. § 1225 violates the INA and whether he is entitled to a bond hearing under § 1226's discretionary detention framework." *Gutierrez*, 2025 WL 2962908, at *3. As such, Petitioner's claims fall outside the narrow jurisdictional limitations of § 1252(g) and, accordingly, § 1252(g) does not deprive the Court of jurisdiction. This conclusion is consistent with this Court and many district courts that have recently addressed this jurisdictional challenge from the government. *See, e.g., id.* (finding § 1252(g) did not strip the court of jurisdiction to consider petitioner's challenge to his detention under § 1225 rather than § 1226); *S.D.B.B.*, 2025 WL 2845170, at *3 (same); *Sultanov v. Lyons*, No, CIV-26-1080-D, 2026 WL 676502, at *1-2 (W.D. Okla. Mar. 10, 2026) (same); *Guerra v. Bondi*, No. CIV025-1240-G, 2026 WL 114258, at *4 (W.D. Okla. Jan, 15, 2026) (same); *Hasan*, 2025 WL 2682255, at *4 (same); *Garcia Cortes*, 2025 WL 2652880, at *1 (same); *Grigorian*, 2025 WL 2604573, at *4 (same).

Respondents cite only one decision, from the District of Minnesota, that has squarely ruled that § 1252(g) bars a district court's jurisdiction to consider a petitioner's challenge to detention. *See* ECF No. 8:20 (citing *S.Q.D.C. v. Bondi*, No. 25-3348 (PAM/DLM), 2025 WL 2617973, at *3 (D. Minn. Sept. 9, 2025)). But that decision "appears to represent an extreme minority position, both in its own district and nationally." *Gonzalez Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *see also Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *5 n.3 (D. Minn. Oct. 1, 2025) ("respectfully disagree[ing] with the conclusion reached by the Court in S.Q.D.C.").[5]

### 3.   Conclusion

The undersigned concludes that neither § 1252(a)(5), § 1252(b)(9), nor § 1252(g) bars this Court from jurisdiction to consider Petitioner's challenge to his detention.

### B.   Section 1226(a) Applies to Petitioner's Detention

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226. Section 1225(a)(1) describes an

---

[5] The district court in *S.Q.D.C.* relied on *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016). *S.Q.D.C.*, 2025 WL 2617973, at *3. Respondents likewise rely on *Alvarez* to argue that "the bar on considering the commencement of proceedings includes a bar on considering challenges to *the basis on which* DHS chooses to commence removal proceedings." (ECF No. 8:18). Not only is *Alvarez* distinguishable on its facts from those here, but district courts considering detention orders have also recently disagreed with jurisdictional arguments relying on *Alvarez*. *E.g., Avila v. Bondi*, No. 25-3741 (JRT/SGE), 2025 WL 2976539, at *4 (D. Minn. Oct. 21, 2025); *Belsai D.S.*, 2025 WL 2802947, at *5 n.3; *Grigorian*, 2025 WL 1895479, at *4-5 (S.D. Fla. July 8, 2025).

"applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." If Petitioner is an "applicant for admission" and "seeking admission" under § 1225(b)(2)(A), he is not entitled to a bond hearing. On the other hand, Section 1226(a) more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Petitioner argues her custody is governed by § 1226(a). *See* ECF No. 1. Respondents contend Petitioner is an "applicant for admission" and properly detained under § 1225(b)(2)(A). (ECF No. 8:20-21).

The undersigned has reviewed the statutory text, Congressional intent, legislative history, and § 1226(a)'s application for the past three decades, as well as numerous recent cases addressing this exact issue. For the reasons stated below, and adopting this Court's reasoning in *Coreas v. Noem*, No. CIV-26-151-J, 2026 WL 541151, at *2 (W.D. Okla. Feb. 26, 2026), the undersigned recommends the Court grant the Petition in part to the extent Petitioner seeks a bond hearing under § 1226(a).

First, the INA limits the scope of the term "seeking admission" in § 1225(b)(2)(A) so that section does not apply to noncitizens already living in the United States when apprehended. Section 1225(b)(2)(A) "only applies when a noncitizen 'applicant for admission' is actively 'seeking admission' into the United States." *Coreas*, 2026 WL 541151, at *2. "If all 'applicants for admission' are also 'seeking admission,' then § 1225(b)(2)(A)'s inclusion of the phrase 'seeking admission' would be redundant and courts should avoid statutory interpretations that make any part of the statute superfluous." *Diaz v. Holt*, No. CIV-25-1179-J, 2025 WL 3296310, at *2 (W.D. Okla. Nov. 26, 2025) (citation modified). The undersigned best understands mandatory detention under § 1225(b)(2)(A) to apply to arriving noncitizens actively seeking admission at or near the border or port of entry—not those like Petitioner who have resided in the United States for years and were not arrested when trying to cross the border.

Second, the legislative history and recent amendment of § 1226 indicate that section applies to noncitizens who previously entered without inspection and were residing in the United States when apprehended. Notably, after passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Department of Justice explained that "despite being applicants for admission, aliens who are present without having been admitted or paroled ... will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (citation modified).

Finally, Petitioner's previous release on parole in 2022 also supports application of § 1226(a) to her current detention. *See Khubiev v. Baltasar*, No. 25-CV-03955, 2026 WL 864237, at *5 (D. Colo. Mar. 30, 2026) (agreeing with petitioner that his detention is governed by § 1226(a) "because it arises from removal proceedings initiated years after his release [on parole] into the United States"); *Rafibaev v. Noem*, No. 26-CV-00461, 2026 WL 607559, at *5 (D. Colo. Mar. 4, 2026) (finding § 1226 rather than § 1225(b)(1) governed detention of petitioner who had previously entered the United States through a port of entry and was subsequently paroled); *Murzi v. Noem*, No. 26-CV-00359, 2026 WL 395111, at *1 (D. Colo. Feb. 12, 2026) (acknowledging rulings by several courts that "paroled petitioners who go on to live in the United States have been released on their own recognizance, and therefore that § 1226, rather than § 1225 applies"). Many district courts outside the Tenth Circuit have similarly ruled. *See, e.g., Suarez-Lugo v. Bondi*, No. 26-CV-00029, 2026 WL 332317, at *9 (S.D. Tex. Feb. 6, 2026) (finding petitioner, "as someone who was previously paroled from custody and continuously resided in the United States while on parole for over two years, is not subject to mandatory detention under 8 U.S.C. § 1225(b)(1)."); *Ahmadi v. Becerra*, No. 25-cv 01044, 2026 WL 309561, at *10 (E.D. Cal. Feb. 5, 2026) ("8 U.S.C. § 1226(a) attaches as the governing legal scheme. Because Petitioner was released on his own recognizance after his initial detention at the border, he is also ineligible for expedited removal proceedings as he has been 'paroled' within the meaning of section 1225(b)(1)." (citation modified)); *Aviles-Mena v. Kaiser*, No. 25-cv-06783, 2025 WL 2578215, at *4 (N.D. Cal. Sep. 5, 2025) (finding "section

1225(b)(1) does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States" because "under the plain meaning of section 1225(b)(1), [petitioner] no longer qualifies for expedited removal because he was paroled into the United States and has been living and working in the United States for three years" (citation modified)).

In sum, this Court, Chief Judge Palk, Judge DeGiusti, Judge Russell, Judge Heaton, and myriad district courts have recently applied § 1226(a) to govern detention of noncitizens like Petitioner.[6] This conclusion is also in accord with the Sixth, Eleventh, Second and Seventh Circuits, which rejected the statutory interpretation of § 1225(b)(2) as urged by Respondents. *See Lopez-Campos v. Raycraft,* --- F.4th ---,  2026 WL 1283891 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, --- F.4th ---,  2026 WL 1243395, at *5 (11th Cir. 2026); *Cunha v. Freden*, No. 25-3141-PR, --- F.4th ---, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). *But see Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026) (agreeing with Respondents' interpretation); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 501-08 (5th Cir. 2026) (same).

---

[6] *See, e.g., Coreas*, 2026 WL 541151, at *2; *Lopez v. Corecivic Cimmaron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *1 (W.D. Okla. Jan. 21, 2026); *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *1 (W.D. Okla. Jan. 13, 2026); *Valdez v. Holt,* No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025); *Colin v. Holt*, CIV-25-1189-D, 2025 WL 3645176, at *5 (W.D. Okla. Dec. 16, 2025).  Two Judges in the District have applied § 1225(b)(2)(A) to a similarly situated petitioner. *See Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026); *Alvarado Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *12 (W.D. Okla. Dec. 26, 2025).

The undersigned agrees with this Court's reasoning, the majority of Judges in this District, and the great weight of the Circuit Courts to conclude Petitioner falls within the confines of § 1226(a). *See, e.g., Singh v. Mullin*, No. CIV-26-173-D, 2026 WL 937557, at *1-2 & 2 n.1 (W.D. Okla. Apr. 7, 2026) (application by this Court of § 1226(a) to a similarly situated petitioner, noting "the Court finds persuasive the analysis by the Seventh Circuit in *Castañon-Nava*").[7]

## C.    Due Process Entitles Petitioner to a Bond Hearing

The undersigned concludes that because § 1226(a) applies to Petitioner's detention, he is owed the due process provided under the statute. When "§ 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226— namely, an individualized bond hearing before an IJ." *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025).

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. It applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. In the civil immigration detention context, courts consistently apply the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, (1976), to evaluate the level of process owed

---

[7] On April 28, 2026, a Second Circuit panel unanimously held § 1226 applies to noncitizens similarly situated to Petitioner. *Da Cunha*, 2026 WL 1146044, at *4 (agreeing with the Seventh Circuit and the majority of district courts and finding the analysis in *Avila* and *Buenrostro-Mendez* "unpersuasive").

a noncitizen. *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-39 (1st Cir. 2021) (applying *Mathews* to due process challenges to prolonged detention under § 1226(a)); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-55 (2d Cir. 2020) (same).

Petitioner alleges her "detention violates due process" under the three-part test laid out in *Mathews v. Eldridge.* (ECF No. 1:13-21). The *Mathews* test includes three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. All three factors weigh in Petitioner's favor.

First, Petitioner has a strong liberty interest in being free from physical detention. This is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause, commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation modified). "Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore v. Kim*, 538 U.S. 510, 522 (2003), but that power remains subject to "important constitutional limitations," *Zadvydas*, 533 U.S. at 695. It does not eliminate Petitioner's significant interest in being

free from detention. *See, e.g., Diaz v. Noem*, No. 26-CV-00782, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (concluding the first *Mathews* factors supports finding a due process violation where petitioner "is being held in a detention facility that strongly resembles penal confinement, is away from his family, and is unable to maintain his employment" (citation modified)).

Second, the risk of erroneous deprivation is high here, considering Respondents' current position to afford Petitioner no bond hearing. *See, e.g., Montero Cordova v. Noem*, No. 26-CV-00526, 2026 WL 867689, at *9 (D.N.M. Mar. 30, 2026) (finding the second *Mathews* factor favors petitioner because "the risk of erroneous deprivation will remain high" "without the opportunity to have the hearing to which Petitioner is entitled" under § 1226(a), and noting "a bond hearing before a neutral immigration judge will provide immense value as an additional safeguard" (citation modified)); *Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest.").

Finally, the Court must consider the government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. While "control over matters of immigration is a sovereign prerogative" and the "government's interest in efficient administration of immigration laws at the border is weighty," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citation modified), such interests in detaining Petitioner without procedural safeguards do not outweigh his liberty interest or risk of erroneous

deprivation. *See Montero Cordova*, 2026 WL 867689, at *10 (finding though "the Government's interest in enforcing its immigration policies must be afforded considerable weight," the third factor favors petitioner because "the fiscal and administrative burdens of providing a bond hearing under § 1226(a) are minimal and do not provide adequate justification for foregoing the hearing entirely"); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) (comparing the "quite limited" harm to government, "because the administrative burden of a bond hearing is minimal," to the "sizeable harm posed to [petitioner] by continued—and potentially unnecessary—detention" (citation modified)).

Bond hearings "are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties." *Singh v. Bondi*, No. 26-CV-0125, 2026 WL 690013, at *6 (W.D. Tex. Mar. 6, 2026). Significantly, Petitioner has had no meaningful opportunity for an immigration judge to consider whether he is a danger to society or a flight risk since his re-detention. Further, the fact Petitioner has been living in the United States for more than five years with no criminal history and was re-detained, weighs in his favor. *See Ekenge v. Baltazar*, No. 26-CV-00630, 2026 WL 617341, at *5 (D. Colo. Mar. 5, 2026) (finding the government's interest "not substantial" where petitioner was re-detained after being released and "any costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue" (citation modified)).

Accordingly, Petitioner's continued detention without a bond hearing violates his Due Process liberty interests, and he is entitled to a prompt bond hearing before an immigration judge.

### D.  The Court Should Order The Government to Bear the Burden of Proof at Petitioner's Bond Hearing

Petitioner requests the government to provide her an individualized bond hearing where "the government bears the burden of proving by clear and convincing evidence that [she] is a danger to the community." (ECF No. 1:7). The Court should agree.

A noncitizen generally has the burden at a bond hearing to show his "release would not pose a danger to property or persons" and he "is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). As discussed above, the Court should grant habeas relief in part and grant Petitioner a bond hearing because her detention is governed by § 1226(a) and due process requires it. As for the burden of proof at a bond hearing, the Court should adopt the approach of other courts in the Tenth Circuit and nationwide and use the *Mathews* balancing test to assess "the type of process required in a given case." *Vizguerra-Ramirez v. Baltazar*, No. 25-CV-00881, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025); *see also, e.g., Velasquez Salazar*, 806 F. Supp. 3d at 1245 (holding the *Mathews* framework supports shifting the burden at a § 1226 bond hearing to the government); *Hernandez-Lara*, 10 F.4th at 39 (holding the government bears the burden at a bond hearing after prolonged detention under § 1226(a)); *Velasco Lopez*, 978 F.3d at 854 (same). *But see Miranda v. Garland*, 34 F.4th 338, 358-65 (4th Cir. 2022) (applying

*Mathews* to conclude due process does not require the government to bear the burden at a § 1226(a) bond hearing for a noncitizen whose detention is not "indefinite and potentially permanent").

Under the circumstances presented here, the undersigned concludes all three *Mathews* factors favor Petitioner and placing the burden of proof on the government at any bond hearing under § 1226(a). First, as discussed above, Petitioner has a fundamental interest in liberty and being free from official restraint. *See Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1283 (D.N.M. 2026) (finding the first *Mathews* factors weighs in favor of the government bearing the burden of proof because "being free from detention is the most elemental of liberty interests" (citation modified)). Accordingly, the first *Mathews* factor favors Petitioner.

Second, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" also favor Petitioner. *Mathews*, 424 U.S. at 335. Notably, requiring Petitioner to bear the burden of proof creates a risk of an erroneous deprivation where Respondents re-detained her without any alleged violation of law or conditions of release. Petitioner had been released from ICE custody, lived in the country for more than five years, complied with all immigration requirements, and had no criminal history. *See* ECF No. 1. ICE's decision to re-detain Petitioner, and deprive her of physical liberty without changed circumstances or reason for re-detention weighs in Petitioner's favor. *See Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the "risk is even more pronounced" where

petitioner had been released on bond previously and requiring the government to justify detention "reduces the risk of an ongoing and erroneous deprivation of Petitioner's liberty"); *Garcia Cortes v. Noem*, No. 25-CV-02677, 2025 WL 2652880, at *4 (D. Colo. Sep. 16, 2025) (finding "a severe risk of erroneous deprivation" based in part on respondents' "failure to identify any criminal record or conviction Petitioner has incurred").

Additionally, assigning the burden of proof to Petitioner puts her in a "difficult" position of "proving a negative," *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183-84 (D. Colo. 2024)—specifically, proving he is neither a flight risk nor a danger to the community despite her more than three years of apparent compliance with the law and any ICE conditions. To the extent the government may contend risk factors warrant Petitioner's continued detention, the information establishing those risks is likely within the government's possession. *Accord Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *4 (W.D. Okla. Feb. 20, 2026) (noting information justifying a noncitizen's re-detention would be contained in the government's own files rather than in the possession of a petitioner detained in ICE custody). Thus, requiring the government to bear the burden of proof for Petitioner's continued detention helps to cure "the risk of an erroneous deprivation," *Mathews*, 424 U.S. at 335, of his liberty interests after the government's unilateral decision to re-detain him. The second *Mathews* factor favors Petitioner.

Finally, "the administrative burden of a bond hearing is minimal." *Arostegui-Maldonado*, 794 F. Supp. 3d at 943. Having determined a bond hearing must be held,

any additional costs from shifting the burden of proof to the government are negligible. Placing the burden of proof on the government promotes the government's interest in "minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854. Moreover, the government has not alleged or demonstrated any changed circumstances since Petitioner's previous release in April 2019 to support his recent re-detention. *See Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the third factor supports shifting the burden to the government because "the Government has not demonstrated any change in circumstances" since petitioner's prior release on bond).

In sum, all three *Mathews* factors support shifting the burden of proof at Petitioner's bond hearing to the government. The undersigned acknowledges that due process may not require this result in all cases. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (recognizing habeas corpus as "an adaptable remedy" where the "precise application and scope" can "change[ ] depending upon the circumstances"). But in cases like this, where Petitioner was previously released years ago and ICE re-detained her without any allegation that she violated the law or conditions of release, the burden should be shifted to the government at a bond hearing to justify her continued detention.

Several Judges in the Circuit have determined the proper remedy for a due process violation under similar circumstances is to require the government at a § 1226(a) hearing to bear the burden to prove a petitioner is a flight risk or danger to the community by clear and convincing evidence. *See Mieles-Parraga v. Bondi*, No. 26-CV-00646, 2026 WL

776489, at *2 (D.N.M. Mar. 19, 2026) (shifting the burden to the government to prove petitioner is a flight risk or danger to community where petitioner had previously been released on bond); *Abanil v. Baltazar*, No. 25-CV-4029, 817 F. Supp. 3d 1148, 1159 (D. Colo. Jan. 14, 2026) (holding "the weight of authority in this District is clear: it is the Government's burden to justify a noncitizens continued detention at a bond hearing" (citation modified)); *Requejo Roman*, 816 F. Supp. 3d at 1282-84 (shifting the burden to the government to prove petitioner is a flight risk or danger to community by clear and convincing evidence where petitioner had previously been released on bond); *Vizguerra-Ramirez*, 2025 WL 3653158, at *16 (applying § 1226(a) to a similarly situated petitioner and ordering a bond hearing at which "the Government must prove by clear and convincing evidence that [he] is either a flight risk or a danger to the community in order to justify continued detention"); *L.G.*, 744 F. Supp. 3d at 1186 ("In sum, in order to continue detaining Petitioner under § 1226(a), due process requires that the Government is required to establish that continued detention is justified by clear and convincing evidence.").The undersigned's recommended approach is consistent with other contexts where the government must justify a person's detention by clear and convincing evidence to meet due process demands. *See, e.g., Foucha*, 504 U.S. at 86 (confinement of "insanity acquittees who are no longer mentally ill"); *Addington v. Texas*, 441 U.S. 418, 432-33 (1979) (involuntary civil commitment proceedings to a mental hospital); *see also Santosky v. Kramer*, 455 U.S. 745, 769-70 (1982) (requiring clear and convincing evidence for termination of parental rights); *Woodby v. Immigr. & Naturalization Serv.*,

385 U.S. 276, 286 (1966) (requiring clear and convincing evidence for deportation of a noncitizen); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (requiring clear and convincing evidence for denaturalization of an individual).

In coming to this recommendation, the undersigned has considered the burden of proof applicable to the government for pre-trial detention of a criminal defendant under the Bail Reform Act. In that context, "the government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (citation modified); *see, e.g., Garcia v. Bondi*, No. 26-CV-01012, 2026 WL 835766, at *4 (D. Colo. Mar. 26, 2026) (applying burden of proof from criminal pre-trial detention to immigration habeas proceedings and "finding no persuasive justification to conclude that a noncitizen must face different standards for the same actions, depending upon the forum, i.e., an administrative charge for removal versus a criminal charge of illegal reentry" (citation modified)). The undersigned has also considered the approach akin to Judge Mitchell's recent Reports and Recommendations, where she concluded after review of the *Mathews* factors that a similarly situated petitioner should be immediately released and not re-detained without a pre-deprivation hearing. *See, e.g.,* ECF No. 11:14-17, *Rodriguez-Navarrete v. Mullin*, No. CIV-26-224-SLP (W.D. Okla. Apr. 3, 2026) (R&R).

The undersigned is persuaded after a careful *Mathews* analysis to recommend the predominant view from judges in this Circuit—that a detainee like Petitioner is entitled to

a § 1226(a) bond hearing where the government bears the burden of proof by clear and convincing evidence for her continued detention. Accordingly, at Petitioner's bond hearing, the government should bear the burden to prove by clear and convincing evidence that she is either a flight risk or a danger to the community to justify continued detention.

## V.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT** in part the Petition for habeas relief by ordering Respondents to provide Petitioner, within five business days, a bond hearing under 8 U.S.C. § 1226(a), at which the government bears the burden of proof, or otherwise release Petitioner if she has not received a lawful bond hearing within that period. The Court should order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Any objection must be filed not later than **June 17, 2026.** If a party wishes to respond to the other party's objections, such response must be filed not later than **June 22, 2026**. *See id*. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VI.   STATUS OF REFERRAL

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on June 10, 2026.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE